# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD L. MARSHALL, JR.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-1128** |
| **STATE OF LOUISIANA,** *et al.* | **SECTION: "G"(2)** |

## ORDER

Before the Court is Plaintiff Donald L. Marshall, Jr.'s ("Marshall") "Motion to Proceed As a Collective Action, for Court-Authorized Notice, and for Disclosure of the Names and Addresses of the Potential Opt-In Plaintiffs."[1] Having considered the motion, the opposition, the record, and the applicable law, the Court will conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b) and notice shall be sent to: "All individuals employed as a sheriff's deputy by Marlin N. Gusman, in his official capacity as Sheriff of Orleans Parish, and the Law Enforcement District for the Parish of Orleans, who worked on a tour of duty shift schedule at any of the following: Civil District Court; Criminal District Court; Municipal District Court; the Temporary Detention Center; the Orleans Parish Prison; Templeman Phase V; the Tents; and the Conchetta Facility, in the three years directly preceding April 9, 2015, and who are or were eligible for overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207, and who did not receive overtime pay or straight time pay for hours actually worked."

## I.  Background

On April 9, 2015, Plaintiff filed a putative class action complaint against Sheriff Marlin N. Gusman, in his official capacity as Sheriff of Orleans Parish, and the Law Enforcement District for the Parish of New Orleans (collectively, "Defendants"), seeking unpaid wages and overtime under

---

[1]  Rec. Doc. 21.

the Fair Labor Standards Act ("FLSA").[2] Marshall alleges that, in the three years prior to filing his complaint, he worked for Defendants as a deputy sheriff, and that he and other similarly situated individuals were not paid in compliance with the FLSA.[3]

On November 4, 2015, Plaintiff filed the instant motion.[4] Defendants filed an opposition to Marshall's motion on November 17, 2015.[5]

## II. Parties' Arguments

### A.    *Plaintiff's Arguments in Support of Conditional Certification*

In his motion, Plaintiff argues that he was hired by Orleans Parish Sheriff's Department to work as a deputy, with duties including prisoner transport, supervision, and paperwork.[6] Marshall claims that, under policies that were uniform throughout Defendants' operations, he and other similarly situated employees were not paid the proper overtime or straight time wages for their work for Defendants.[7] Therefore, Plaintiff seeks to certify a collective action for the following class:

> All individuals who worked or are working for Defendants, Marlin N. Gusman, in his official capacity as Sheriff of Orleans Parish and the Law Enforcement District for the Parish of Orleans performing the duties of a sheriff's deputy, and working on a tour of duty shift schedule, for three years directly preceding the April 9, 2015 [sic], and who are or were eligible for overtime pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive overtime pay or straight time pay for hours actually worked.[8]

---

[2]  Rec. Doc. 1. Marshall initially filed suit against the State of Louisiana as well, but the Court dismissed the state as a defendant, on sovereign immunity grounds, on September 21, 2015. Rec. Doc. 17.

[3]  *Id.*

[4]  Rec. Doc. 21.

[5]  Rec. Doc. 23.

[6]  Rec. Doc. 21-1 at p. 3.

[7]  *Id.* at p. 4.

[8]  *Id.*

According to Plaintiff, at the "notice stage" of this litigation, his burden of showing a class of similarly situated plaintiffs entitled to receive opt-in notice of the action is minimal due to a fairly lenient standard.[9] Marshall argues that district courts in the Fifth Circuit generally apply the two-tiered "*Lusardi* approach" when certifying a collective action under the FLSA.[10] Plaintiff asserts that, under the first step of the *Lusardi* approach, a district court makes a decision, usually based only on the pleading and any affidavits that have been submitted, whether notice of the actions should be given to potential class members.[11] Plaintiff claims that, at the first stage, courts have minimal evidence and therefore make a determination using a fairly lenient standard, which typically results in "conditional certification" of a representative class, whereby class members are given notice and the opportunity to "opt-in."[12]

According to Marshall, at the second stage, a defendant may move to decertify the class after discovery is largely completed and the matter is ready for trial.[13] Thus, Marshall claims, in order to secure conditional certification at this stage, he need only make a preliminary showing that at least a few similarly situated individuals exist, which he can do via pleadings, affidavits, and other supporting documentation.[14] Plaintiff claims that the "similarly situated" standard does not require

---

[9] *Id.* at p. 5.

[10] *Id.* at p. 6 (citing *Kaloum v. Stoult Offshore, Inc.*, 474 F. Supp. 2d 866 (S.D. Tex. 2003); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793 (E.D. La. 2007)).

[11] *Id.*

[12] *Id.*

[13] *Id.* at p. 7.

[14] *Id.*

a showing that each potential plaintiff is in an identical situation, but only that they are "similar."[15] According to Marshall, the FLSA requires only "some factual nexus" binding the plaintiff and potential plaintiffs as victims of a particular alleged policy or practice.[16]

Marshall argues that he has alleged, through his complaint and affidavit, that he and others similarly situated were not paid proper wages, overtime or otherwise, for the hours worked for Defendants.[17] According to Marshall, mandatory roll calls for deputies occurred immediately prior to each shift, for which compensation was not afforded.[18] Furthermore, Plaintiff avers, this is due to an institutional policy wherein no pre-shift or post-shift overtime would be approved or paid unless it exceeded 30 minutes in duration, despite the policy that no deputy may leave their post until relieved by the oncoming shift deputy.[19] Plaintiff claims that other potential plaintiffs are ready and willing to join in the lawsuit, and only wait for certification due to the fear of retaliation.[20]

According to Marshall, in *Johnson v. TGF Precision Haircutters, Inc.*, a Southern District of Texas case, the court authorized conditional certification for all TGF stylists and receptionists who worked for the company on the basis of the plaintiff's affidavit and the employee handbook, which the court believed showed a common policy violating the FLSA.[21] Marshall avers that, in *Kaluom v. Stolt Offshore, Inc.*, another section of the Southern District of Texas held that, although

---

[15] *Id.* at pp. 7–8 (citing *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

[16] *Id.* at p. 8 (citing *England*, 370 F. Supp. 2d at 508).

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at p. 10.

[21] *Id.* (citing 319 F. Supp. 2d 753 (S.D. Tex. 2004)).

there was minimal evidence that other aggrieved individuals existed, it was unlikely that the defendants' pay procedures uniquely affected only the representative plaintiff.[22] Marshall argues that, in *Kaluom*, which involved maritime workers, the court did not limit the class to individuals who were on the same vessel as the plaintiff, finding that any current or former employee who worked as a rigger or pipe-facing machine operator for the defendant could be considered a potential opt-in plaintiff.[23] As in *Kaluom*, Marshall argues, the fact that a deputy may have been employed at different locations than him does not change the nature of their work, nor the fact that the agency-wide policy affected them in substantially the same way.[24]

Next, Marshall contends that the Court should authorize the notice to be sent to potential opt-in plaintiffs.[25] Plaintiff argues that prompt certification and notice are essential, as the statute of limitations on individual opt-in plaintiffs' claims are not automatically tolled until that individual worker files his or her consent-to-sue form with the Court.[26] Furthermore, Plaintiff argues, the Court should order Defendants to provide the names, last-known addresses of potential plaintiffs, and dates of employment, for the purpose of facilitating the Court-approved notice, within two weeks of the signing of this Order.[27]

---

[22] *Id.* (citing 474 F. Supp. 2d 866 (S.D. Tex. 2007)).

[23] *Id.*

[24] *Id.*

[25] *Id.* at p. 11 (citing *Lima v. In'tl Catastrophe Sols., Inci,.* 493 F. Supp. 2d 793, 798 (E.D. La. 2007); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)).

[26] *Id.* at pp. 12–13.

[27] *Id.* at p. 13 (citing *Sperling*, 493 U.S. at 170; *Johnson*, 319 F. Supp. 2d at 754; *Kaluom*, 474 F. Supp. 2d at 875).

Finally, Plaintiff argues that the Court should allow for an opt-in period of 90 days.[28] Marshall argues that a 90-day opt-in period will allow dispersal of the notice throughout publications in the greater New Orleans area.[29] According to Marshall, providing notice through local publications will keep the cost of notice at a minimum, and a 90-day period will allow time for potential opt-in plaintiffs to gain knowledge of the notice.[30] Plaintiff claims that 90-day opt-in periods, or similarly long windows, have been issued in other FLSA cases in order to allow time for adequate notice to potential opt-in plaintiffs.[31] According to Plaintiff, a 90-day opt-in period in this case will allow for time to notify potential opt-in plaintiffs while reducing the cost of providing notice.[32]

## B.    *Defendants' Arguments in Opposition to Conditional Certification*

In opposition, Defendants state that Marshall is a former deputy sheriff who was employed with the Law Enforcement District for the Parish of Orleans ("Sheriff's Office") on three separate occasions: January 27, 2003–September 13, 2004, March 13, 2006–September 29, 2008, and August 20, 2010–December 30, 2014.[33] Defendants claim that Marshall resigned from his employment with the Sheriff's Office on December 30, 2014 after being elected as constable for Tangipahoa Parish.[34] According to Defendants, for the purposes of this lawsuit, the conditionally certified class, if any,

---

[28] *Id.* at p. 14.

[29] *Id.*

[30] *Id.*

[31] *Id.* (citing *Lima v. In'tl Catastrophe Sols., Inci,.* 493 F. Supp. 2d 793, 804 (E.D. La. 2007); *Jackson v. City of San Antonio*, 220 F.R.D. 55 (W.D. Tex. 2003)).

[32] *Id.* at p. 15.

[33] Rec. Doc. 23 at pp. 1–2.

[34] *Id.* at p. 2.

should be limited to the dates of April 9, 2013–April 9, 2015, rather than a three-year statute of limitations as authorized by 29 U.S.C. § 255(a), because Plaintiff "has failed to put forth even a prima facie case of willfulness such that the three (3) year statute of limitations would apply," and "[a]s such, the relevant time period is two (2) years prior to the filing of the lawsuit by Plaintiff."[35]

Defendants argue that, to properly evaluate Marshall's motion for conditional certification, the Court must compare and contrast the various responsibilities of deputy sheriffs in Orleans Parish based upon their particular work assignments because the duties and responsibilities of deputy sheriffs are divergent and dissimilar.[36] According to Defendants, deputy sheriffs are assigned to work in one of the following locations: Criminal District Court, Civil District Court, Municipal Court, the Temporary Detention Center, the Tents, the Intake Processing Center, the Reentry Program, the Orleans Parish Prison, Templeman Phase V, the Electronic Monitoring Program, McDaniels Transitional Work Center, and the Conchetta Facility, with duties and responsibilities varying significantly based upon the facility in question.[37]

For example, Defendants claim, a deputy sheriff assigned to work in Criminal District Court would be responsible for receiving inmates at the courthouse, escorting them to and from their court proceedings, assisting judges in managing court proceedings in a safe and orderly manner, and executing arrest warrants for criminal defendants.[38] According to Defendants, such deputies are scheduled to work from 8 a.m. to 4 p.m. five days a week, with no requirement to stay beyond their

---

[35] *Id.* at p. 2, p. 2 n.1.

[36] *Id.* at p. 2.

[37] *Id.* at pp. 2–3.

[38] *Id.* at p. 3.

scheduled shift unless there is a trial that goes late into the evening.[39] Therefore, Defendants contend, deputy sheriffs in Criminal District Court rarely worked overtime.[40] Defendants argue that duties could vary widely, as a deputy sheriff in Municipal Court would work from 8 a.m. to 4 p.m. five days a week, but may have no involvement with inmates, while a deputy sheriff assigned to work in Orleans Parish Prison would be assigned to a 12-hour shift three days per week and work closely with inmates.[41] Deputies in Orleans Parish Prison, Defendants aver, would occasionally work beyond their scheduled shift in order to properly transition the inmates to the next assigned shift.[42] Duties and schedules would widely vary across other facilities as well, Defendants contend, with some deputies often performing post-shift duties and others rarely doing so.[43]

Defendants argue that, during his employment with the Sheriff's Office, and during the relevant dates of April 9, 2013–April 9, 2015, Marshall worked primarily at the Criminal District Court.[44] Specifically, Defendants contend, Marshall was assigned to the Criminal District Court from April 9, 2014–March 30, 2014, the Tents from March 30, 2014–June 2014, although Marshall was out of work on FMLA leave during his entire assignment to the Tents, and the Temporary Detention Center from June 30, 2014–December 30, 2014.[45] Thus, Defendants contend, during the "three year relevant period," Marshall spent one year and eleven months in the Criminal District Court, three

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at pp. 3–4.

[42] *Id.* at p. 4.

[43] *Id.*

[44] *Id.* at p. 5.

[45] *Id.*

months assigned to the Tents, and six months in the Temporary Detention Center.[46] Defendants aver that, although Marshall alleged in his affidavit that he and other deputies were required to remain at their posts until relieved by the deputies coming on to the next shift, this would have only been true for the last six months of his employment, in the Temporary Detention Center, as Criminal District Court deputies were not required to remain at their posts in such a manner.[47]

Next, Defendants contend that Marshall used a significant amount of leave during the relevant period of his employment with the Sheriff's Office, and it is therefore important to "highlight [his] unique and sporadic attendance record given his attempt to position himself as similarly situated to all other deputy sheriffs."[48] For example, Defendants note, Marshall only worked eight days in the month of November 2013, and was out on leave for the entire month of December.[49] Similarly, Defendants contend, Marshall was out on leave virtually all of January 2014 and March 2014, as well as the entire months of April, May, and June 2014.[50]

Defendants argue that Marshall bears the burden of establishing that he and each member of the proposed collective action group are "similarly situated."[51] Defendants claim that a collective action should only be employed in cases involving "common issues of law and fact arising from the same alleged . . . activity" such that resolution of the issues in one proceeding would promote

---

[46] *Id.*

[47] *Id.* at p. 5.

[48] *Id.* at pp. 5–6.

[49] *Id.* at p. 6.

[50] *Id.*

[51] *Id.* (citing *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007)).

efficiency and judicial economy.[52] Defendants argue that too much leniency under the first step of the *Lusardi* approach can lead to a "frivolous fishing expedition conducted by the plaintiff at the employer's expense."[53] Moreover, Defendants contend, courts "have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required" would eliminate the benefits of the collective action.[54]

Defendants aver that although Plaintiff's burden at this first stage of the certification process is relatively lenient, conditional certification is not automatic and must only be granted in appropriate circumstances.[55] Furthermore, they argue, whether employees are "similarly situated" for purposes of the FLSA is determined in reference to their "job requirements."[56] According to Defendants, courts in the Fifth Circuit regularly deny conditional certification because of variation in job duties or other work conditions.[57] Here, Defendants contend, conditional certification should be denied because of the substantial variation among the job duties of the putative class members, with deputy sheriffs who work in jails being directly involved in the care, custody, and control of inmates, while deputies working in courts are responsible for maintaining the safety and security of

---

[52] *Id.* at p. 7 (citing *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

[53] *Id.* (citing *Lima*, 493 F. Supp. 2d at 799 (quoting *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007))).

[54] *Id.* at p. 8 (quoting *Clay v. Huntington Ingalls, Inc.*, No. 08-7625, at p. 8 (E.D. La. Sept. 29, 2011) (Zainey, J.)).

[55] *Id.*

[56] *Id.* at p. 9 (citing *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (Zainey, J.)).

[57] *Id.* (citing *Bodle v. TXL Mortg. Corp.*, No. 12-1515, 2012 WL 5828616, at *1, *10 (S.D. Tex. Oct. 2, 2012); *Xavier*, 585 F. Supp. 2d at 880; *Green v. Plantation of La., LLC*, No. 10-0364, 2010 WL 5256354, at *4, *8 (W.D. La. Nov. 24, 2010); *Theriault v. WM & B, LLC*, No. 06-206, 2006 WL 6584399, at *2–3 (S.D. Tex. Aug. 18, 2006)).

the courthouse.[58] Because Marshall spent all but six months of his career with the Sheriff's Office assigned to Criminal District Court, Defendants aver, he would not be similarly situated to the deputy sheriffs working in the jails and other facilities.[59]

Furthermore, Defendants argue, Marshall has not articulated "a single rule, policy or practice applicable to the class for which he seeks conditional certification."[60] According to Defendants, the "class" of deputies that Plaintiff seeks to represent includes individuals with differing sets of duties, responsibilities, and work schedules, including both pre-shift and post-shift responsibilities.[61]

Next, Defendants point to Marshall's allegedly irregular work schedule, arguing that his extensive use of leave makes his attendance record unique and dissimilar from the vast majority of deputy sheriffs in the Sheriff's Office.[62] Defendants argue that, given his sporadic attendance, the calculation of any straight time or overtime owed to him would require individualized analysis and calculation that would not be required for other deputies, and thus a class with Marshall as the representative would not benefit from the efficiency that should result from a conditional certification.[63]

In the alternative, Defendants argue that, should the Court decide to conditionally certify a class, it should narrow the class to those non-exempt individuals who worked from April 9, 2013 to April 9, 2015 as deputy sheriffs in one of the courts managed by the Sheriff's Office: Civil

---

[58] *Id.* at p. 10.

[59] *Id.*

[60] *Id.* at p. 11.

[61] *Id.*

[62] *Id.* at p. 12.

[63] *Id.*

District Court, Criminal District Court, and Municipal District Court.[64] Defendants argue that Plaintiff spent the majority of his employment assigned to the Criminal District Court and would have more commonality in duties, responsibilities, and work schedule with the deputy sheriffs assigned to the courts.[65] Furthermore, Defendants argue that, even if the Court determines that the six-month period that Plaintiff worked in the Temporary Detention Center warrants inclusion of deputy sheriffs in the Temporary Detention Center and/or other jails, the class should not include deputy sheriffs from the Intake Processing Center, the Reentry Program, the Electronic Monitoring Program, or the McDaniels Transitional Work Center, whose deputies performed very different tasks.[66]

Next, Defendants aver that Plaintiff's proposed notice and opt-in procedure are defective.[67] According to Defendants, class notice must be drafted in neutral, clear, and objective language and should be "accurate[] and informative."[68] Here, Defendants argue, Plaintiff's proposed notice is "misleading and biased in Plaintiff's favor."[69] Specifically, Defendants aver, the proposed notice does not adequately and completely inform potential opt-in plaintiffs of the effect of joining the case, including that they may have to participate in the discovery process, answer interrogatories, and be deposed.[70] Defendants argue that the notice also fails to warn plaintiffs that they will be

---

[64] *Id.*

[65] *Id.* at p. 13.

[66] *Id.*

[67] *Id.*

[68] *Id.* (quoting *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

[69] *Id.* at p. 14.

[70] *Id.*

jointly and severally liable for taxable costs under 28 U.S.C. § 1920 if Defendants prevail.[71] Defendants also claim that the notice does not contain the contact information for defense counsel and fails to inform potential opt-ins that they may contact any attorney of their choosing to discuss the case.[72]

Defendants also aver that Marshall's proposed 90-day opt-in period is too long given the facts of the case and the likelihood that all potential plaintiffs will be in Orleans Parish or one of the surrounding parishes.[73] Defendants also argue that the notice should include a prohibition on solicitation that notes that counsel for Marshall is prohibited from contacting or soliciting potential plaintiffs.[74] Defendants request that, if the Court grants conditional certification, the Court should provide the parties time to discuss the outlined issues and submit to the Court a joint order.[75]

### III.  Law and Analysis

#### A.    *Legal Standard*

Under § 216(b) of the FLSA, one or more employees can pursue a class action in a representative capacity on behalf of similarly situated employees.[76] Such collective actions allow similarly situated plaintiffs "the advantage of lower individual costs to vindicate rights by the

---

[71] *Id.*

[72] *Id.*

[73] *Id.* (citing *Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 501 (D. Neb. 2009); *Greenwald v. Phillips Home Furnishings, Inc.*, No. 08-1128, 2009 WL 1025545, at *1 (E.D. Mo. Apr. 15, 2009); *Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-488, 2008 WL 5263750, at *6 (E.D. Wis. Dec. 18, 2008)).

[74] *Id.* at p. 15.

[75] *Id.*

[76] 29 U.S.C. § 216(b) ("An action to recover the liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").

pooling of resources" and benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact."[77] A plaintiff may proceed collectively under the FLSA unless "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice."[78] There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit.[79] This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure.[80]

The FLSA does not define the requirements for employees to be deemed "similarly situated." Instead, a two-step method is routinely utilized, which was originally articulated in *Lusardi v. Xerox Corporation*[81] and described in detail by the Fifth Circuit in *Mooney v. Aramco Services, Co.*[82] Under this approach, a court first determines at the "notice stage" whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[83] Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and

---

[77] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172–74 (1989).

[78] *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (Zainey, J.) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

[79] 29 U.S.C. § 216(b).

[80] *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[81] 118 F.R.D. 351 (D.N.J. 1987).

[82] 54 F.3d at 1213–14.

[83] *See id.*

14

typically results in 'conditional certification' of a representative class."[84] Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[85]

At the notice stage, the burden is on the plaintiff to demonstrate that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[86] The burden to show that plaintiffs are similarly situated rests on the plaintiff,[87] but that burden may be satisfied by demonstrating only a reasonable basis for the allegation that a class of similarly situated persons may exist.[88] "Plaintiffs need not be identically situated, and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities."[89] "Whether at the notice stage or on later review, collective action certification is not precluded by the fact that the

---

[84] *Id.* at 1214.

[85] *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[86] *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.) (quoting *Morales v. Thang Hung Corp.*, 4:08–2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug.14, 2009)).

[87] *See England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *Kenyatta-Bean v. Hous. Auth. of New Orlean*, No. 04-2592, 2005 WL 3543793, at *6 (E.D. La. Nov. 18, 2005) (Lemmon, J.).

[88] *See Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (Fallon, J.) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996)).

[89] *Chapman v. LHC Grp., Inc.*, No. 13-6384, 2015 WL 5089531, at *5 (E.D. La. Aug. 27, 2015) (Brown, J.) (citing *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992); *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21-22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

putative plaintiffs performed various jobs in differing departments and locations."[90] Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[91]

"At the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[92] If it is later determined, after a more extensive discovery process, that a plaintiff failed to carry his burden of establishing that he and members of the proposed class are similarly situated, an employer may file a motion to decertify the class.[93]

The more lenient *Lusardi* approach is not the only recognized method for conditional collective action certification,[94] although it is the more common approach and routinely used by courts in this District.[95] Moreover, this approach "is consistent with the Fifth Circuit's statements

---

[90] *Donohue v. Francis Serv., Inc.*, No. 04-170, 2004 WL 1161366, at * 2 (E.D. La., May 24, 2004) (citations omitted) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations). "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement. *Id.* at *3.

[91] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[92] *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734, at *4 (E.D. La. Aug. 10, 2015) (Lemelle, J.).

[93] *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

[94] In *Mooney*, the Fifth Circuit also discussed a second methodology referred to at the "*Shushan*" or "spurious class action" approach, in which the court conducts an inquiry similar to that outlined in Federal Rule of Civil Procedure 23. *See Mooney,* 54 F.3d at 1214 (citing *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990)). *Mooney* did not state which of the two procedures is the proper approach, although the "two stage" *Lusardi* approach is more commonly used by district courts. The *Shushan* approach has been described as "more stringent" than the "two stage" approach. *See, e.g.*, *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 670 (N.D. Tex. 2007). Under the *Shushan* analysis, plaintiffs must prove the existence of a definable, manageable class, and that plaintiffs are proper representatives of the class. This requires plaintiffs to provide individualized proof that the claims of every single opt-in plaintiff can be presented to a jury with some measure of efficiency. *Shushan*, 132 F.R.D. at 268.

[95] *See, e.g., Johnson v. Big Lots Stores, In.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008) (Vance, J.) (describing the *Lusardi* approach as the "prevailing method"); *Basco v. Wal-Mart Stores*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (Duval, J.) ("Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reach on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis . . . ."); *see also* 7B Charles

that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed. R. Civ. P., and the collective action provided by FLSA."[96] In their memoranda, both Plaintiff and Defendants cite the *Lusardi* standard.[97] Accordingly, this Court will apply the *Lusardi* approach in determining whether this case is appropriate for collective action treatment.

### B.    Analysis

#### 1.    Conditional Certification

At the notice stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[98] Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[99] Here, Plaintiff alleges that he and other similarly situated employees were not paid the proper overtime or straight time wages for their work for Defendants.[100] Marshall alleges that he is similarly situated to potential collective action members whose duties included providing security, prisoner transport, and other services at Orleans Parish Prison, Orleans Criminal District Court, and other locations throughout Orleans Parish.[101] According to Marshall, mandatory roll calls for

---

Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1807 (3d ed. 2002) (stating that "most courts in collective actions follow a two-stage certification process").

[96]    *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 4591088 (M.D. La. Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).

[97]    *See* Rec. Docs. 21, 23.

[98]    *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).

[99]    *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[100]   Rec. Doc. 23 at p. 4.

[101]   Rec. Doc. 21-5.

deputies occurred immediately prior to each shift, for which compensation was not afforded.[102] Furthermore, Plaintiff avers, this is due to an institutional policy wherein no pre-shift or post-shift overtime would be approved or paid unless it exceeded 30 minutes in duration, despite the policy that no deputy may leave their post until relieved by the oncoming shift deputy.[103] Plaintiff claims in his motion—although the Court notes that no such claim is made in Plaintiff's affidavit—that other potential plaintiffs are ready and willing to join in the lawsuit, and only wait for certification due to the fear of retaliation.[104] On their face, these allegations appear sufficient to pass the low bar set by the first step of the *Lusardi* approach to conditional certification.

Defendants respond, however, that the job duties and responsibilities of deputy sheriffs vary widely by place of employment, including in ways that would affect possible overtime hours worked, such as varying policies regarding whether employees are required to stay beyond their scheduled shifts until they are relieved by another deputy.[105] Defendants also challenge Marshall as a representative for a putative class, arguing that he spent a majority of the relevant class period working for the Criminal District Court and only six months at the Temporary Detention Center, and moreover that Marshall's unusual absences would require an individualized analysis and calculation that would not be required for other deputy sheriffs.[106]

In determining whether putative class members were together the victims of a "single decision, policy or plan," courts often look to their "job requirements and with regard to their pay

---

[102] Rec. Doc. 21-1 at p. 8.

[103] *Id.*

[104] *Id.* at p. 10.

[105] Rec. Doc. 23 at p. 3.

[106] *Id.* at pp. 5, 12

provisions."[107] However, "[p]laintiffs need not be identically situated, and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities."[108] "Whether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."[109]

Here, Defendants raise a concern that the job requirements for deputies varied depending on the location where deputies worked. Such concerns, however, are often dealt with at the second stage of the *Lusardi* approach, rather than the first, and often favor narrowing the scope of a class rather than failing to certify it altogether.[110] In *Lima v. International Catastrophe Solutions, Inc.*, for example, another section in the Eastern District of Louisiana held that conditional certification for a class that included employees of numerous different subcontractors was appropriate given the possibility that a review of the defendants' pay records would reveal a common plan of improperly

---

[107] *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (Zainey, J.) (quoting *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 797 (E.D. La. 2007) (Fallon, J.)).

[108] *Chapman v. LHC Grp., Inc.*, No. 13-6384, 2015 WL 5089531, at *5 (E.D. La. Aug. 27, 2015) (Brown, J.) (citing *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992); *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21–22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

[109] *Donohue v. Francis Serv., Inc.*, No. 04-170, 2004 WL 1161366, at * 2 (E.D. La., May 24, 2004) (citations omitted) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations). "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement." *Id.* at *3.

[110] *See Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 800 (E.D. La. 2007); *Kaluom v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866, 875 (S.D. Tex. 2007) (rejecting defendants' argument that the class should not be certified, but agreeing to limit it to those who performed the same type of work as plaintiff, and rejecting defendants' arguments that the class should be narrowed to only those employees who worked on precisely the same vessel as plaintiff, were employed on a derrick/pipelay barge that was afloat on waters over the Outer Continental Shelf, and were employed by the same crewing company as plaintiff); *Donahue*, 2004 WL 1161366, at *3.

paying overtime.[111] If discovery unveiled no such commonality, the court held, the court could decertify the action as to any subcontractors who were not involved in the same alleged scheme or practice.[112] Similarly, in *Donohue v. Francis Services, Inc.*, another section of the Eastern District of Louisiana certified a class of "all current and former employees of Francis Services Inc. and/or Francis Torque Services"—without any job description or title whatsoever—and rejected the defendants' argument that such a class "is problematic because it includes individuals from various positions, locations, etc."[113] The court held that "the law is plain that that does not undermine the 'similarly situated' requirement."[114]

Marshall alleges that a uniform policy barred deputies from receiving payment for overtime that did not exceed 30 minutes in duration, and names at least two examples (a roll call and the requirement to remain at a post until relieved from duty) of policies that often required overtime hours allegedly in violation of the FLSA.[115] This factual nexus arising from an alleged violation of the FLSA is satisfactory for purposes of conditional certification. Furthermore, Plaintiff does not allege that he was singled out for underpayment, but that all employees who worked overtime were affected by the Sheriff's Office's policy. In support of these allegations, Plaintiff has submitted an affidavit and time sheets.[116]

---

[111] *Lima*, 493 F. Supp. 2d at 799–800.

[112] *Id.* at 800.

[113] *Donahue*, 2004 WL 1161366, at *3.

[114] *Id.* (citing *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)*; Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987)).

[115] Rec. Docs. 21-1 at p. 8; 21-5.

[116] Rec. Docs. 21-4, 21-5.

Defendants respond with declarations from Craig Lawson, a lieutenant for the Orleans Parish Sheriff's Office, and Seandra Buchanan, the director of human services for the Sheriff's Office, describing the variations in job duties and work shifts between deputies who work in courts versus those who work in prisons and other facilities.[117] Defendants also spend a significant portion of their briefing describing the level of interaction that certain deputies have with inmates. They fail to establish, however, why some minor variation in job duties, particularly regarding whether or not deputies interact with inmates, raises doubts as to whether plaintiffs have "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" regarding a failure to properly compensate deputies.[118] Even the case law cited by Defendants in support of their position generally included much greater variations in job duties and titles than those presented here. For example, in *Theriault v. WM & B LLC*, a Southern District of Texas case, the court denied conditional certification of a class of "wood craftsmen, carpenters helpers, trim carpenters, trim men, mill wrights, and general laborers" where the evidence presented suggested that the employees had varying duties and wages, worked on different projects, in different geographic locations, under different supervisors, and in certain circumstances, the plaintiff would have been the only employee of a certain job type at each of the projects he worked on.[119] Defendants present no evidence that the variations in job duties or wages paid rose to the same level as those deemed fatal in *Theriault*.

The Court notes that, in his pleadings and affidavit, Marshall refers to policies such as the

---

[117] Rec. Docs. 23-1, 23-2.

[118] *See Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988).

[119] No. 06-206, 2006 WL 6584399, at *2–3 (S.D. Tex. Aug. 18, 2006).

roll call and the duty to remain at his post until relieved as a mandatory function of his role as a deputy, without specifying that those policies were unique to either the Criminal District Court or the Temporary Detention Center.[120] Defendants, however, contend that such policies were only in place at jails or prisons.[121] To the extent that the parties have raised a factual dispute, the Court has insufficient evidence at this time to determine whether such policies were universal or not, and therefore whether two separate classes, or more, may be necessary. Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[122] Therefore, at this stage the Court finds that conditional certification of one class is appropriate. If, after discovery, Defendants maintain that the evidence merits decertification of certain portions of the class, they may move to decertify or modify the conditionally certified class as defined if appropriate.

However, it is undisputed that of the three categories of facilities outlined by Defendants—courts (comprising Civil District Court, Criminal District Court, and Municipal District Court), jails/prisons (comprising the Temporary Detention Center, Orleans Parish Prison, Templeman, Tents, and Conchetta), and other facilities (comprising the Intake Processing Center, the Reentry Program, the Electronic Monitoring Program, and the McDaniels Transitional Work Center),[123] Marshall worked only at courts and jails/prisons. Defendants allege that the job duties

---

[120] *See* Rec. Doc. 21-5.

[121] Rec. Doc. 23-2 at p. 2.

[122] *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1214 (5th Cir. 1995).

[123] Rec. Doc. 23 at p. 13.

and work shifts of deputy sheriffs assigned to other facilities varied meaningfully from those assigned to courts and jails/prisons, which Plaintiff does not rebut via affidavit or any other evidence. Plaintiff argues that an "agency-wide policy" affected all deputies in substantially the same way,[124] but provides no evidence to suggest that Plaintiff has personal knowledge of the policies in place outside the courts and jails/prisons. Therefore, the Court finds that limiting the class to exclude deputies who worked at the Intake Processing Center, the Reentry Program, the Electronic Monitoring Program, and the McDaniels Transitional Work Center is appropriate.

Finally, Defendants allege that, because Marshall took significant leave and was otherwise absent from work, the calculation of any straight time or overtime owed to him would require individualized analysis and calculation that would not be required for other deputies, and thus a class with Marshall as the representative would not benefit from the efficiency that should result from a conditional certification.[125] Courts have declined to conditionally certify classes where individual inquiries would so predominate that it would be "impossible to try [the] case as a collective class."[126] However, Defendants cite no authority to explain why Marshall's significant use of leave would require such an "individualized analysis" that class certification is unwarranted. Although other deputy sheriffs may have "a more consistent attendance record," the FLSA's overtime and wage requirements are not premised on frequent attendance. Instead, the "FLSA requires that non-exempt

---

[124] *Id.*

[125] *Id.* at p. 11.

[126] *See, e.g.*, *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 880 (E.D. La. 2008) (Zainey, J.) (declining to conditionally certify a class where the defendant employed 2,100 subcontractors in at least 44 states at different job sites, with projects requiring a range of fewer than five workers to more than 2,000 workers); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (declining to certify a class where plaintiffs' counsel had estimated that between 200 and 400 discovery depositions would be required given the involvement of a "multitude of different managers at different geographical locations across the country").

employees who work more than forty hours in a work week must be paid one and one-half times their 'regular rate' of pay."[127] The Court sees no reason why Marshall's election to take months of FMLA leave or any other absences would have any effect on the question of Defendants' liability. Although Marshall will almost certainly be subject to different damages calculations than other plaintiffs, by the very nature of FLSA claims, each individual plaintiff in an FLSA case requires some individualized inquiry into damages based on dates of employment, overtime hours worked, rate of pay, and other individual facts.[128] Although such differences could warrant additional consideration under the "typicality" prong of a Rule 23 class action, a "216(b) FLSA action is not a Rule 23 class action."[129] Therefore, the Court finds that Marshall's allegedly unique attendance record does not bar conditional certification in this matter.

### a.    *Statute of Limitations*

Buried in a sentence at the very end of its motion, Plaintiff asks the Court to toll the statute of limitations under the FLSA during the pendency of the opt-in period.[130] Similarly, in a footnote, Defendant urges the Court to find that, because Plaintiff has failed to put forth a prima facie case of

---

[127] *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (citing 29 U.S.C. § 207(a)(1))

[128] *See Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 288 (N.D. Tex. 2012) ("[T]he court need not find uniformity in each and every aspect of employment to determine that a class of employees is similarly situated."); *Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2007 WL 5200224, at *9 (E.D. La. Aug. 21, 2007) (Vance, J.) ("The Court recognizes that there are some differences between plaintiffs' employment experiences as assistant managers. But the terms of the FLSA's collective action provision allow for differences. To pursue claims against an employer, plaintiffs must be *similarly situated*. They do not have to be *identically situated*."); *Meseck v. TAK Communications, Inc.*, No. 10–965, 2011 WL 1190579, at *6 (D. Minn. March 28, 2011) ("Courts in this district and elsewhere consistently hold that . . . individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion.").

[129] *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005); *see also Cantu v. Vitol, Inc.*, No. 09-0576, 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009) ("*Lusardi* . . . imposes different and less stringent requirements than a Rule 23 class action . . . .").

[130] Rec. Doc. 21-1 at p. 15.

willful conduct, the statute of limitations on Plaintiff's claim should be two years rather than three.[131] Defendant does not oppose Plaintiff's request to toll the statute of limitations, and Plaintiff filed no reply brief addressing willfulness. Neither party briefs the issue in any meaningful fashion.

The applicable statute of limitations period under the FLSA is set forth in 29 U.S.C. § 255. The action must commence within two years after the cause of action accrued; however, if the violation is "willful," the cause of action must be commenced within three years after it accrued.[132] "Willful" means "that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute."[133] "In a collective action, the action is 'commenced' in the case of an opt-in plaintiff on the date a written consent is filed."[134] However, this limitations period is subject to tolling on equitable grounds.[135] "Evidence that would permit tolling is evidence that would show that an employer-defendant engaged in fraud or misrepresentations that induced plaintiffs to delay filing FLSA-required opt-in notices."[136]

Although Defendants do not contest Plaintiff's request to toll the statute of limitations, the Court does not fault them for any failure to address a request that was so inartfully pled. Here, the Court finds that Plaintiff has submitted no evidence showing that his employer has engaged in fraud or misrepresentations such as would delay the filing of opt-in notices. Even though Plaintiff stated

---

[131] Rec. Doc. 23 at p. 2.

[132] 29 U.S.C. § 255.

[133] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 128 (1988).

[134] *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 803 (E.D. La. 2007) (citing 29 U.S.C. § 256(b); *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)).

[135] *Id.* (citing *Hodgson v. Humphries*, 454 F.2d 1279, 1283–84 (10th Cir. 1972)).

[136] *Baldridge v. SBC Comm'cns Inc.*, 2006 WL 832517, at *1 (N.D. Tex. 2006) (citing *Ott v. Midland–Ross*, 523 F.2d 1367, 1370 (6th Cir. 1975)).

in his motion that other potential opt-in plaintiffs "fear . . . retaliation,"[137] his affidavit makes no such claim, and he provides no other evidence of any behavior by Defendants that would warrant the tolling of the statute of limitations. Therefore, the Court declines to do so here.

Similarly, Plaintiff does not rebut Defendants' assertion that the statute of limitations ought to be two, rather than three, years. The Court notes again, however, that Defendants did not brief the issue in any detail. "In order to take advantage of the longer statute of limitations period on their claims, Plaintiffs bear the burden of proving that Defendant willfully violated the FLSA."[138] Although Plaintiff has requested a three-year class period, Plaintiff has not clearly argued that Defendants willfully violated the FLSA. On the other hand, Plaintiff has argued that Defendants employed an institutional policy wherein no pre-shift or post-shift overtime would be paid unless it exceeded 30 minutes in duration.[139] Courts within the Fifth Circuit have often held that, given the low standard employed at the first step of the *Lusardi* approach, and the fact-intensive nature of the question of willful conduct, plaintiffs need not prove willfulness at the conditional certification stage.[140] Because the Court finds that additional discovery will likely reveal whether a two- or three-year statute of limitations is appropriate, the Court finds that conditional certification of a three-year class is appropriate at this stage, subject to any motion for decertification following discovery.

---

[137] Rec. Doc. 21-1 at p. 10.

[138] *Reyes v. Tex. Ezpawn, L.P.*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006) (citing *Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)).

[139] Rec. Doc. 21-1 at pp. 9–10.

[140] *See Skelton v. Sukothai, LLC*, 994 F. Supp. 2d 785, 788 (E.D. La. 2014) (Berrigan, J.) ("[T]he willfulness required to create damages liability for a three-year span is a fact-sensitive determination under FLSA that would benefit from discovery."); *see also Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012) ("FLSA plaintiffs are not required to prove willfulness prior to discovery.") (citing *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565, at *8 (S.D. Tex. Nov. 17, 2008)).

### 2. Request for Defendants to Provide Names and Last-Known Addresses of Potential Plaintiffs

In addition, Plaintiff asks the Court to order Defendants to produce the names, addresses and dates of employment no later than two weeks after the signing of this order.[141] This appears to be information that could be obtained using the normal tools of discovery, and Defendants raise no objection to Plaintiff's request. Therefore, the Court finds that it need not issue a separate order requiring Defendants to provide the requested information. Should Defendants fail to do so in a timely manner, Plaintiff may file an appropriate motion.

### 3. Notice and Opt-in Period

Defendants raise numerous concerns with Marshall's proposed notice, and have requested that if the Court grants conditional certification, it should provide the parties with time to discuss Defendants' concerns and submit to the Court a joint notice.[142] The Court therefore orders that the notice be revised consistent with this Order, and that the parties shall meet and confer regarding the content of the notice. If the parties cannot agree to a joint notice, they should request an expedited status conference with the Court.

Defendants also argue that Plaintiff's proposed 90-day opt-in period is "too long given the facts of this case and the likelihood that all potential plaintiffs will be in Orleans Parish or one of the surrounding parishes."[143] Defendants cite several cases from other districts in which 45-day opt-

---

[141] Rec. Doc. 21-1 at p. 13.

[142] Rec. Doc. 23 at p. 15.

[143] *Id.* at p. 14.

27

in periods were deemed sufficient,[144] as well as a case from the District of Maryland holding that a 30-day opt-in period after receipt of mailed notice was adequate.[145] Plaintiff, however, argues that a 90-day opt-in period will allow dispersal of the notice throughout publications in the greater New Orleans area, which will keep the cost of notice at a minimum.[146] Plaintiff claims that 90-day opt-in periods, or similarly long windows, have been issued in other FLSA cases in order to allow time for adequate notice to potential opt-in plaintiffs.[147]

"Longer opt-in periods have been granted in cases where potential plaintiffs are hard to contact due to their migration or dispersal."[148] In *Lima v. International Catastrophe Solutions*, an Eastern District of Louisiana Case cited by Plaintiff, the court allowed an opt-in period of 90 days in light of evidence that class members previously employed by the defendants had migrated to other states, and because tracking down the potential plaintiffs would be both cumbersome and time-consuming due to a language barrier.[149] Here, Plaintiff has showcased no similar hurdles to providing notice, but has only stated that less expensive alternatives would require more time. However, because the Court has declined to toll the statute of limitations on putative opt-in plaintiffs claims, and as such statute of limitations on their claims continues to run, the Court finds that

---

[144] *Id.* (citing *Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 501 (D. Neb. 2009); *Greenwald v. Phillips Home Furnishings, Inc.*, No. 08-1128, 2009 WL 1025545, at *1 (E.D. Mo. Apr. 15, 2009); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-488, 2008 WL 5263750, at *6 (E.D. Wis. Dec. 18, 2008)).

[145] *Id.* (citing *Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008)).

[146] Rec. Doc. 21-1 at p. 14.

[147] *Id.* (citing  *Lima v. Int'l Catastrophe Sols., Inc,.* 493 F. Supp. 2d 793, 804 (E.D. La. 2007); *Jackson v. City of San Antonio*, 220 F.R.D. 55 (W.D. Tex. 2003)).

[148]  *Lima*, 493 F. Supp. 2d at 804 (citing *Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 240–42 (N.D.N.Y. 2002) (allowing for an opt-in period of nine months largely due to fact that potential plaintiffs had or were likely to have migrated to other places within North America and other continents)).

[149] *Id.*

a 45-day opt-in period would be more appropriate in this matter.

## IV.  Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion to Proceed As a Collective Action, for Court-Authorized Notice, and for Disclosure of the Names and Addresses of the Potential Opt-In Plaintiffs" is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Notice shall be sent to: "All individuals who worked or are working for Defendants, Marlin N. Gusman, in his official capacity as Sheriff of Orleans Parish, and the Law Enforcement District for the Parish of Orleans, who are or were employed at any of the following: Civil District Court; Criminal District Court; Municipal District Court; the Temporary Detention Center; the Orleans Parish Prison; Templeman Phase V; the Tents; and the Conchetta Facility, performing the duties of a sheriff's deputy, and working on a tour of duty shift schedule, in the three years directly preceding April 9, 2015, and who are or were eligible for overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207, and who did not receive overtime pay or straight time pay for hours actually worked."

**IT IS FURTHER ORDERED** that the parties meet and confer regarding the form and content of the proposed notice, in keeping with the Court's ruling herein. The parties are ordered to submit a joint proposed notice within 10 days of the date of this Order. If the parties are unable to agree on a proposed notice, the parties shall submit (1) their proposed notice and (2) their objections, with supporting authority, to the opposing party's notice and/or consent form, within 10 days of this Order, and request an expedited status conference on the matter.

**IT IS FURTHER ORDERED** that the opt-in period for putative class members shall be 45 days from the date that a final notice is approved by this Court.

**NEW ORLEANS, LOUISIANA** this _22nd_ day of January, 2016.

_Nannette Jolivette Brown_

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**